O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN; TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA HEALTH TRUST FUND, TRUSTEES OF THE LOS ANGELES COUNTY ELECTRICAL EDUCATIONAL AND TRAINING TRUST FUND; TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA LABOR-MANAGEMENT COOPERATION COMMITTEE, CONTRACT COMPLIANCE FUND; NATIONAL ELECTRIACL INDUSTRY FUND; ADMINISTRATIVE MAINTENANCE FUND; LOS ANGELES ELECTRICAL WORKERS CREDIT UNION, <br><br>　　　　　Plaintiffs, <br>　　v. <br>GARTEL CORP., <br>　　　　　Defendant. | Case No. 2:11-cv-5929-ODW(SHx) <br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [28]** |

## I.　INTRODUCTION

Plaintiffs are trustees of various trusts created under trust agreements between a local union chapter and an employers' association. These agreements and others

obligated Defendant Gartel Corp. to pay certain contributions at specified rates depending on how many hours its employees worked on covered projects. When Gartel failed to pay all required fringe-benefit contributions, Plaintiffs filed suit. Since Gartel never answered, the Clerk entered default, and Plaintiffs moved for default judgment. After considering Gartel's liability and Plaintiffs' requested damages and costs, the Court **GRANTS** Plaintiffs' Motion for Default Judgment.[1]

## II. FACTUAL BACKGROUND

Plaintiffs Trustees of the Southern California IBEW-NECA Pension Plan, Trustees of the Southern California IBEW-NECA Health Trust Fund, Trustees of the Los Angeles County Electrical Educational and Training Trust Fund, Trustees of the National Electrical Benefit Fund, and Trustees of the Southern California IBEW-NECA Labor-Management Cooperation Committee are trustees of express trusts created under trust agreements between various chapters of the International Brotherhood of Electrical Workers ("IBEW") and employers' associations of the National Electrical Contractors Association ("NECA"). (Compl. ¶ 5.) Contract Compliance Fund, National Electrical Industry Fund, Administrative Maintenance Fund, and Los Angeles Electrical Workers Credit Union all collect various payments authorized under collective-bargaining agreements. (*Id.*)

Gartel is incorporated and has its principal place of business in California. (*Id.* ¶ 6.) On or before January 1, 2008, Gartel performed electrical work on various public-works projects covered by the Los Angeles Unified School District Project Stabilization Agreement–New School Construction and Major Rehabilitation Funded by Proposition BB and/or Measure K ("PSA"). (*Id.* ¶ 7.) Gartel is bound to the PSA for work performed on projects covered by the agreement. (*Id.* ¶ 8.)

The PSA incorporates, among others, the Inside Wiremen's Agreement and the Sound & Communications Agreement, which are collective-bargaining agreements

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

between IBEW Local 11 and the Los Angeles County Chapter of NECA. (*Id.* ¶ 9.) On November 17, 2008, Gartel also signed a letter of assent to both of these agreements. (*Id.* ¶¶ 10–11.) The Inside Wiremen's Agreement incorporates the terms of Plaintiffs' trust agreements. (Johnson Decl. ¶ 7.) As an employer, the agreements obligate Gartel to pay, among other things, fringe-benefit contributions on a monthly basis at specified rates for each hour worked by covered employees. (Compl. ¶ 14(B).) If an employer fails to timely pay mandated contributions, the employer also becomes liable for liquidated damages, interest, audit fees, litigation expenses, and reasonable attorneys' fees. (Johnson Decl. Ex. B, at 16; Ex. C, at 31.)

Since January 1, 2008, Gartel has failed to pay to Plaintiffs all required fringe-benefit and other contributions for five different Los Angeles Unified School District projects. (Compl. ¶ 18; Ware Decl. Ex. 1.) Plaintiffs' auditor calculated $109,335.40 in missing contributions for the period of January 1, 2009, through April 24, 2012. (Ware ¶ 6, Ex. 1; Mot. 4.)

On July 19, 2011, Plaintiffs filed a Complaint against Gartel for breach of the trust and collective-bargaining agreements and violation of the Employee Retirement Income Security Act ("ERISA"). Plaintiffs filed a proof of service on August 24, 2011. (ECF No. 5.) Since Gartel never answered, the Clerk entered default. (ECF No. 16.) On April 1, 2013, Plaintiffs moved for default judgment. Defendants have not opposed the Motion, and it is now before the Court for decision.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active servicemember; and (4) that the defaulting party was properly served with notice.
///

A district court has discretion whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

Plaintiffs argue that Gartel breached the Inside Wiremen's Agreement and the PSA by failing to pay all mandated fringe-benefit contributions for hours worked by Gartel employees on covered projects. As a result, Plaintiffs seek the delinquent contributions, liquidated damages, prejudgment interest, and costs.

**A.   Liability**

ERISA provides that, if a multiemployer plan or collective-bargaining agreement obligates an employer to make contributions, the employer must make the contributions according to the terms and conditions of the relevant agreements. 29 U.S.C. § 1145.

Gartel's failure to timely and fully pay all contributions calculated according to the rates specified in the Inside Wiremen's Agreement and the PSA—as confirmed by Plaintiffs' audit—violates § 1145. This violation thus renders Gartel liable for the damages and remedies enumerated in the agreements and provided under ERISA.

/ / /

It is also apparent that Gartel was properly served with process. Section 415.20(a) of the California Code of Civil Procedure provides a person may effect substitute service on a corporation by delivering a copy of the summons and complaint to the corporation's business address and leaving the documents with a person apparently in charge. Here, after several unfruitful attempts, Plaintiffs served a Jane Doe occupant of Gartel's registered business address and also mailed a copy of the documents to the same location. (ECF No. 5, at 1.) There is no indication that the mail was not received. Service was therefore proper under California law.

**B. Damages**

Plaintiffs request several types of damages from Gartel, including the unpaid contributions, prejudgment interest, liquidated damages, audit fees, attorneys' fees, and litigation expenses. The Court considers each in turn.

When a fiduciary of a covered plan obtains a favorable judgment, ERISA mandates that a court award unpaid contributions, interest on those contributions, liquidated damages or a similar amount, reasonable attorneys' fees, and other relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

*1. Unpaid contributions*

Plaintiffs' auditor reviewed Gartel's payroll records for the period between January 1, 2008, and April 24, 2012. (Ware Decl. ¶ 6.) The auditor determined that Gartel failed to pay $109,335.40 in fringe-benefit contributions on five different Los Angeles Unified School District projects. (*Id.* Ex. 1.) The auditor computed this amount by multiplying the hours worked and wages paid to Gartel employees during the relevant time period by the rates specified in the agreements. Plaintiffs are therefore entitled to $109,335.40 in unpaid contributions.

*2. Prejudgment interest*

ERISA specifically dictates that a court award prejudgment interest in unpaid-contribution actions like this one. 29 U.S.C. § 1132(g)(2)(B). The interest rate is either the rate set under the relevant agreements, if any, or the rate established under

26 U.S.C. § 6621. Here, Plaintiffs invoke the latter interest-rate determination and seek $10,214.78 in interest calculated through May 6, 2013, the hearing date of this Motion.

Section 6621 provides that the underpayment interest shall be the federal short-term interest rate plus three percentage points. 26 U.S.C. § 6621(a)(2). The Treasury Secretary determines the short-term interest rate. *Id.* § 6621(b)(1). Interest is compounded on a daily basis. Rev. Rul. 2012-32, 2012-52 I.R.B. 762 (2012).

Plaintiffs' auditor calculated the prejudgment interest using the historical underpayment interest rates, culminating with the current three-percent rate. (Johnson Decl. Ex. G.) Gartel accordingly owes Plaintiffs $10,214.78 in prejudgment interest.

  *3. Liquidated damages*

ERISA also provides that a prevailing trust fiduciary is entitled the greater of an amount equal to the interest on the unpaid contributions or the liquidated damages provided under the applicable agreements. 29 U.S.C. § 1132(g)(2)(C). But the statute caps the liquidated damages at 20 percent of the unpaid contributions. *Id.* § 1132(g)(2)(C)(ii).

The agreements here provide that liquidated damages are determined based on the number of days a payment is late, up to 18 percent per annum. Plaintiffs request a total of $47,119.87, which is also calculated through the hearing date. But Plaintiffs' requested amount exceeds ERISA's liquidated-damages cap. Plaintiffs are therefore only entitled to $21,867.08 in liquidated damages, which is 20 percent of Gartel's unpaid contributions.

  *4. Audit fees*

Plaintiffs additionally request $3,037.50 in audit fees. ERISA does not specifically authorize an audit-fees award. But § 1132 does permit a court to award "such other legal or equitable relief as the court deems appropriate." *Id.* § 1132(g)(2)(E). In Section 7.52 of the Inside Wiremen's Agreement, the parties agreed that a delinquent contractor would pay audit fees incurred by the trustees in a

collection action. The Court thus finds it appropriate to award Plaintiffs $3,037.50 in audit fees.

      5.     *Attorneys' fees and litigation costs*

ERISA further requires that a court award reasonable attorneys' fees in an unpaid-contribution action. *Id.* § 1132(g)(2)(D). The Ninth Circuit has recognized that "attorney's fees are no longer discretionary in § 1132(g)(2) cases." *Operating Eng'rs Pension Trust v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984).

A court calculates reasonable attorneys' fees using a "hybrid lodestar / multiplier approach." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). First, one multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds by Burlington v. Dague*, 505 U.S. 557 (1992). Second, the court may increase or decrease the lodestar amount after assessing the factors enunciated by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). *D'Emanuele*, 904 F.2d at 1383.

Plaintiffs seek $44,265.66 in hourly attorneys' fees (including paralegal work) and $5,284.66 in litigation expenses. But in an accompanying declaration, Plaintiffs list $38,981.00 in attorneys' and paralegal fees. Plaintiffs submitted billing records for each of the attorneys and paralegals that worked on the case.

A review of the billing records reveals that a significant portion of the hours were spent on Gartel's bankruptcy matter—a separate, though partially related, case. It appears that 99.3 hours were spent exclusively on this case. Multiplying those hourly totals by the various billing rates results in $22,467.00 in attorneys' and paralegal fees—an average of $226.25 per hour. The Court accordingly awards Plaintiffs $22,467.00 in attorneys' and paralegal fees.

| Attorney/Paralegal | Total Hours | Years out of Law School | Hourly Rate | Total |
|---|---|---|---|---|
| JLS | 43.4 | 7 | $220 | $9,526 |
| JLS | 28.4 | 7 | $240 | $6,816 |

| | | | | |
|---|---|---|---|---|
| JPM | 14 | 8 | $220 | $3,080 |
| MTB | 0 | 5 | $195 | $0 |
| SGL | 4.6 | 21 | $280 | $1,288 |
| SGL | 4.4 | 21 | $300 | $1,320 |
| KAM | 3.4 | n/a | $95 | $323 |
| NEW | 1.2 | n/a | $95 | $114 |

Plaintiff's requested costs include process-server fees, copying, postage, mileage, parking, scanning, faxing, printing, legal research, a filing fee, and subpoena fees. The Court agrees that Gartel must reimburse Plaintiffs for most of these costs. 29 U.S.C. § 1132(g)(2)(D)–(E). But the Court notes again that some costs are associated with the bankruptcy matter, and other computations are unreasonably high.

The Court therefore adjusts the costs and finds that $2,717.34 is a reasonable cost award. Specifically, the Court finds that $0.10 per page is reasonable for copying, faxing, printing, and scanning—not $0.25 per page. Plaintiffs also do not apportion their PACER research, legal research, copying, printing, faxing, or scanning between the bankruptcy matter and this case. The Court thus reduces each requested amount by 50 percent. The mileage and parking charges similarly do not apply to this case, so the Court excludes them.

| Item | Units | Reasonable Cost | Total |
|---|---|---|---|
| Process server | 14 | varies | $535.00 |
| Copies | 1,147 | $0.10 | $114.70 |
| Postage | 8 | Varies | $71.70 |
| Fax | 22 | $0.10 | $2.20 |
| Mileage | 0 | $0 | $0 |
| Legal research | 10 | varies | $962.75 |
| PACER | varies | varies | $36.99 |
| Parking | 0 | $0 | $0 |
| Printing | 1,408 | $0.10 | $140.80 |

| | | | |
|---|---|---|---|
| Scanning | 3,210 | $0.10 | $321.00 |
| Subpoena costs | 1 | n/a | $182.20 |
| Filing fee | 1 | $350 | $350.00 |

## V.   CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Default Judgment is **GRANTED**.  Gartel shall pay Plaintiffs a total of $169,639.10 in damages and costs, consisting of the following amounts:

- $109,335.40 in unpaid contributions;
- $10,214.78 in prejudgment interest;
- $21,867.08 in liquidated damages;
- $3,037.50 in audit fees;
- $22,467.00 in attorneys' fees; and
- $2,717.34 in costs.

The Court will enter judgment in accordance with this order.

**IT IS SO ORDERED.**

April 19, 2013

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE